ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPCECIAL

| | | |
|---|---|---|
| **JULIO H. JUSINO**<br><br>Recurrido<br><br>v.<br><br>**MFS CONTRACTORS CORP.<br>SAMUEL TORRES BERROCALES<br>SAMUEL TORRES BERROCALES h/n/c MFS CONTRACTORS, CORP.<br>SAMUEL TORRES BERROCALES y la Sociedad de Bienes Gananciales integrada con JENNY DOE<br>JENNY DOE y la Sociedad de Bienes Gananciales integrada con SAMUEL TORRES BERROCALES<br>JENNY DOE<br>COMERCIAL SABANEÑO, INC. h/n/c CASAS UNIVERSALES**<br><br>Recurrente | KLRA202300483 | **REVISIÓN**<br>procedente del<br>**Departamento de Asuntos del Consumidor**<br><br>Querella Núm.:<br>**MAY-2019-0001707**<br><br>Sobre:<br>Contrato de Obras y Servicios |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard, la Jueza Díaz Rivera y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2024.

Mediante *Recurso de revisión judicial de decisión administrativa* comparece Comercial Sabaneño, Inc. (Recurrente o Comercial Sabaneño) y nos solicita que revoquemos la *Resolución* del 21 de julio de 2023, emitida por el Departamento de Asuntos del Consumidor (DACo).[2] Esta ordenó que Comercial Sabaneño respondiera por los daños causados a Julio H. Jusino (Recurrido o Sr. Jusino) por defectos de construcción e incumplimiento de contrato.[3]

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución del Hon. Carlos I. Candelaria Rosa.
[2] Apéndice de *Recurso de revisión judicial de decisión administrativa*, Anejo I, págs. 1-13. Notificada y archivada en autos el 21 de julio de 2023.
[3] *Íd.*

En atención al *Recurso de revisión judicial,* el 15 de septiembre de 2023, emitimos una *Resolución* en la que ordenamos la comparecencia de las partes y señalamos que no advertiríamos de los requerimientos procesales ni de sus plazos. Empero varias notificaciones, la parte Recurrida no ha comparecido. Como cuestión de umbral, prescindimos de su comparecencia con el propósito de lograr el más justo y eficiente despacho y proveer el más amplio acceso al Tribunal a tenor con la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (B) (5).

Por los fundamentos a continuación, *confirmamos* la *Resolución* de referencia.

I.

Según el DACo, Comercial Sabaneño es una corporación con fines de lucro debidamente registrada en el Departamento de Estado de Puerto Rico y dedicada a los servicios de ferretería y de construcción.[4] El Comercial Sabaneño opera un establecimiento en Sabana Grande, PR, que, entre los servicios que ofrece, vende casas prefabricadas.

El 22 de marzo de 2018, el Sr. Jusino pactó con Comercial Sabaneño, mediante Contrato de Venta, para la construcción de una casa prefabricada por $63,049.43.[5] El Contrato de Venta contenía una oferta de "servicio ingeniero, supervisión de etapas y gestión de permiso de construcción y uso".[6] Para cumplir con dicha oferta, Comercial Sabaneño contrató los servicios del Ingeniero Monserrate González Lugo (Ingeniero González Lugo) para ejecutar las labores de supervisión, ingeniería y permisología requerida para la construcción de la propiedad.[7] Según el testimonio de la Sra. Lilliam

---

[4] *Íd.,* pág. 4.
[5] *Íd.,* Anejo X, págs. 77-85.
[6] *Íd.,* pág. 77.
[7] *Íd.,* Anejo I, pág. 3.

Torres Martínez, vendedora de Comercial Sabaneño, Inc., el ingeniero se escogió luego de cotizar "varios ingenieros y el mejor que cotizó, el más económico, decidimos dar una oferta para el beneficio de las personas que en [el 2018] compraban su casa; se le ofrecía la oferta de ingeniero que no tenían que pagarlo, lo [costeábamos] nosotros acá".[8] Del expediente, se desprende que el criterio más importante en la selección del ingeniero fue el factor económico. Esto se realizó sin la participación del Sr. Jusino en el proceso.[9]

El Comercial Sabaneño también le recomendó al Sr. Jusino los servicios de la corporación MSF Contractors Corp. para la construcción de la propiedad. El presidente y dueño de MFS Contractors Corp. es el señor Samuel Torres Berrocales, hermano de la Sra. Torres Martínez e hijo del señor Carlos Torres Berrocales, presidente de Comercial Sabaneño y Casas Universales.[10] Durante su testimonio, el Sr. Jusino declaró que [la Sra. Torres Martínez] se lo recomendó al cien por ciento (100%)"[11] y que luego en la tarde, luego de hablar con la Sra. Torres Martínez, el Sr. Torres Berrocales lo llamó. Dijo el Sr. Jusino que "me metió un montón de cosas y yo pues, creyendo que estaba bregando con gente seria, pues yo le dije pues está bien, yo te la voy a dar a ti y allí empezó todo esto, estos problemas".[12] Así las cosas, el Sr. Jusino y MSF Contractors Corp. pactaron en el precio de $98,890.00 para la fabricación de la casa en todas sus etapas.[13]

En resumen, el Sr. Jusino pactó con MSF Contractors Corp. y con Comercial Sabaneño. Con Comercial Sabaneño, el Sr. Jusino convino en entregar $63,049.43 a cambio de los materiales y planos

---

[8] Acta de Transcripción de vistas celebradas en Departamento de Asuntos del Consumidor (DACO), 18 de noviembre de 2022.
[9] *Íd.*, pág. 21.
[10] *Íd.*, págs. 7-8 y 24.
[11] *Íd.*, pág. 105.
[12] *Íd.*, pág. 106.
[13] *Íd.*, pág. 109; Anejo I, *supra*, pág. 4.

de construcción, los servicios de ingeniería, la supervisión de etapas de construcción y la gestión de permisos de construcción y uso. Con MSF Contractors Corp., el Sr. Jusino pactó entregar $98,890.00 a cambio de la construcción de la casa según los planos provistos por Comercial Sabaneño. Para cumplir con sus obligaciones, Comercial Sabaneño contrató, sin la participación del Sr. Jusino, los servicios del Ingeniero González Lugo.

La construcción demoró varios meses, durante los cuales el Ingeniero González Lugo alegadamente realizó inspecciones periódicas y certificó que los trabajos cumplían con los planos aprobados por la Oficina de Gerencia de Permisos (OGPe).[14] Sin embargo, la determinación de hechos en la *Resolución* concluyó que:

> Al finalizar la construcción, el Ingeniero [González Lugo] realizó una última inspección en la que informó que: (a) se observó que la terminación del piso muestra grietas y no se pulió el mismo, (b) las paredes aparentan no tener segunda mano de pintura en primer y segundo nivel, (c) falta de empañetado en el muro periferal de toda la marquesina, (d) en algunas áreas, el empañetado no fue terminado apropiadamente, (e) algunos receptáculos de los baños y cocina no son a prueba de electrocución, (f) algunos operadores de las ventanas no funcionan bien, (g) en varias puertas no funcionan las cerraduras, (h) los relieves que sobresalen las columnas se deberán corregir, (i) falta de llave de paso angular, (k) la zapata del pedestal eléctrico está expuesta, (l) la tubería sanitaria que corre hacia el pozo séptico está expuesta. No tienen la profundidad requerida. (m) una de las losetas en la sala está mal instalada, (n) la huella del primer escalón (bajando hacia la primera planta) no cumple con los requerimientos mínimos de huella y contrahuella (tiene 4 pulgadas de contrahuella), (o) [l]a instalación de los lavamanos no cumple con la altura indicada en los planos, (p) falta instalación de pasamanos y barandas de la escalera.[15]

A pesar de que la inspección final no reflejó las certificaciones por etapa que realizó el Ingeniero González Lugo, la propiedad fue entregada al Sr. Jusino sin corregir las deficiencias anteriormente señaladas. En efecto, la propiedad se encontraba incompleta, puesto que no cumplía con los planos provistos por Comercial Sabaneño ni

---

[14] Anejo I, *supra,* pág. 4.
[15] *Íd.*

con el contrato de construcción entre el Sr. Jusino y MSF Contractors Corp. La casa requería de múltiples arreglos y correcciones para que el Sr. Jusino la pudiera vivir. Para mitigar los daños, el Sr. Jusino se vio obligado a realizar reparaciones valoradas en aproximadamente $8,150.00.[16] También se vio obligado a contratar los servicios del Ingeniero José L. Pérez Berenguer para que evaluara la obra. Este certificó que la obra estaba defectuosa e incompleta.[17]

Así las cosas, el 9 de septiembre de 2019, el Sr. Jusino presentó una *Querella* ante DACo en contra de Comercial Sabaneño, MSF Contractors Corp., Samuel Torres Berrocales, Samuel Torres Berrocales h/n/c MFS Contractors Corp., Samuel Torres Berrocales y la sociedad de Bienes Gananciales integrada con Jenny Doe, Jenny Doe y la sociedad de Bienes Gananciales integrada con Samuel Torres Berrocales y Jenny Doe (en conjunto, Co-Querellados) por incumplimiento de contrato y defectos de construcción.[18] Solicitó como remedio una indemnización no menor de $45,000.00 como compensación por los daños causados.[19] Únicamente compareció Comercial Sabaneño, por lo que se le anotó la rebeldía al resto de los Co-Querellados. Aunque Comercial Sabaneño solicitó la acumulación del Ingeniero González Lugo, el DACo rechazó su inclusión como parte.

El DACo ordenó la inspección de la propiedad. El 20 de mayo de 2020, el inspector del DACo notificó sus conclusiones. En el Informe, el inspector concluyó que:

> [H]emos analizado el plano y en este no contempla paredes viradas, enlucido áspero, empozamientos de agua, ventanas mal instaladas, obviar rejas, y terminaciones defectuosas. **Entendemos que el ingeniero [González Lugo] debió supervisar los trabajaos de contratista.** De estos haber sido supervisados, el defecto de paredes viradas no hubiese

---

[16] *Íd.*, pág. 6.
[17] *Íd.*, págs. 4-6.
[18] *Íd.*, Anejo IV, págs. 32-46.
[19] *Íd.*, pág. 46.

sucedido, así como la construcción de lavarropas más pequeño de lo señalado en el plano.[20]

El 21 de julio de 2023, luego de analizar los hechos y celebrar una vista, DACo emitió su *Resolución*. Ordenó:

> [A] los co-querellados, MFS Contractors Corp., el señor Samuel Torres Berrocales y el Comercial Sabaneño Corp. h/n/c Casas Universales, a que dentro del improrrogable término de treinta (30) días, a partir de la fecha de notificación de la presente Resolución, pague la cantidad de <u>cincuenta y tres mil novecientos cincuenta y cinco dólares ($53,955.00)</u> al Querellante, Julio H. Jusino, con el interés legal al tipo que fija la ley computado desde la fecha en que se ordena el pago hasta que el mismo sea satisfecho.[21]

El 8 de agosto de 2023, Comercial Sabaneño solicitó reconsideración, la cual fue denegada y notificada el 15 de agosto de 2023. Inconforme, el 13 de septiembre de 2023, Comercial Sabaneño presentó el *Recurso* ante nuestra consideración. En este, hace los siguientes señalamientos de error:

> **PRIMER ERROR: EL D.A.Co. ERRÓ EN LA SEGUNDA ORACIÓN DE LA DETERMINACIÓN DE HECHOS NÚMERO 1 AL ESTABLECER QUE "EL COMERCIAL SABANEÑO SE DEDICA A LOS SERVICIOS DE FERRETERÍA <u>Y CONSTRUCCIÓN</u>". ELLO PARECE SER <u>UN ERROR TIPOGRÁFICO</u>, POR LO QUE LA DETERMINACIÓN CONFORME LA PRUEBA ESTIPULADA, QUE FUE OFRECIDA DURANTE LA VISTA Y QUE CORRESPONDE A LA VERDAD DEBE DECIR "EL COMERCIAL SABANEÑO SE DEDICA A LOS SERVICIOS DE FERRETERÍA Y <u>VENTA DE MATERIALES DE</u> CONSTRUCCIÓN.**
>
> **SEGUNDO ERROR: EL D.A.Co. ERRÓ AL IMPONER RESPONSABILIDAD A COMERCIAL SABANEÑO INC. H/N/C CASAS UNIVERSALES, CUANDO DICHA ENTIDAD NO PARTICIPÓ EN LA CONSTRUCCIÓN NI EN LA SUPERVISIÓN DE LA OBRA, PUES DICHAS ACTIVIDADES ÚNICAMENTE PUEDEN SER REALIZADAS POR UN PROFESIONAL ESPECIALIZADO Y LEGITIMADO PARA ELLO.**
>
> **TERCER ERROR: EL D.A.Co. ERRÓ AL NO PERMITIR LA INCLUSIÓN COMO PARTE INDISPENSABLE DEL INGENIERO MONSERRATE GONZÁLEZ LUGO Y/O J.R. CONTRACTORS (INGENIEROS), QUIEN FUE EL PROFESIONAL ENCARGADO DE LA SUPERVISIÓN DE LA CONSTRUCCIÓN.**

---

[20] *Íd.*, Anejo VII, pág. 67. (Énfasis nuestro).
[21] *Íd.*, Anejo I, pág. 11.

**CUARTO ERROR: EL D.A.Co. ERRÓ AL DETERMINAR QUE COMERCIAL SABAÑEÑO INC. H/N/C CASAS UNIVERSALES DEBE RESPONDER EN LA MISMA MEDIDA Y SOLIDARIAMENTE QUE EL CONTRATISTA QUE CONSTRUYÓ LA CASA Y POR LAS ACCIONES U OMISIONES DEL INGENIERO QUE SUPERVISÓ LA CONSTRUCCIÓN QUE ES UN TERCERO QUE NO ES PARTE DE LA QUERELLA, AUN CUANDO NO HAY NINGÚN SEÑALAMIENTO DE DEFECTOS O DAÑOS QUE SURGIERAN COMO CONSECUENCIA DEL CONTRATO DE COMPRAVENTA Y/O DEL PLANO ACORDADO Y/O PROVISTO POR EL COMERCIAL SABANEÑO, INC. Y QUE COMERCIAL SABANEÑO, INC. NO BRINDA SERVICIOS DE CONSTRUCCIÓN O INGENIERÍA.**

En resumen, para atender las reclamaciones de Comercial Sabaneño, debemos contestar los siguientes interrogativos: (1) ¿Es Comercial Sabaneño una empresa dedicada a proveer servicios de construcción?; (2) ¿Es el Ingeniero Martínez Lugo una parte indispensable en un pleito alegando incumplimiento contractual ante el DACo?; (3) ¿Responde Comercial Sabaneño ante el Sr. Jusino por los daños causados por los actos u omisiones del Ingeniero González Lugo?; y, (4) ¿Responde Comercial Sabaneño solidariamente con MSF Contractors Corp. y los otros Co-Querellados?

Examinados los hechos que dieron lugar a la presente controversia, procedemos a discutir el derecho aplicable.

II.

A.

El Artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003 (4 LPRA sec. 24y (c)) faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023); *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712 (2012). Al

momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 (3 LPRA sec. 9601 *et seq.*) (LPAU) y por la jurisprudencia aplicable. La sección 3.1 de la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra,* sec. 4.5.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho** emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**. *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas,

y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. Al revisar las determinaciones de hecho, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. "Evidencia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.*, *supra*, pág. 266 (citando a *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006)). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Los tribunales les deben menor deferencia a las conclusiones de derecho de las agencias. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 115. Aun así, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones de derechos de una agencia. *Íd.* En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

B.

La Asamblea Legislativa creó el Departamento de Asuntos del Consumidor con el propósito primordial de "vindicar e implementar los derechos del consumidor, frenar las tendencias inflacionarias; así como el establecimiento y fiscalización de un control de precios sobre los artículos y servicios de use y consumo". Ley Núm. 5 de 23 de abril de 1973, (3 LPRA sec. 341b). Entre sus responsabilidades, el DACo tiene la responsabilidad de fiscalizar la industria de

construcción y todos los servicios que la componen. Ley Núm. 130 de 13 de junio de 1967, (17 LPRA 501 *et seq.*) (Ley Núm. 130).

Para lograr estos propósitos, el DACo aprobó el Reglamento Núm. 2268, Para Regular las Distintas Actividades que se Llevan a Cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico, Departamento de Asuntos del Consumidor, del 17 de agosto de 1977 (Reglamento Núm. 2268). Tanto la Ley Núm. 130 como el reglamento Núm. 2268 definen lo que es un "Urbanizador y/o Constructor". *Íd.*, sec. 1 (f); Ley Núm. 130, *supra*, Art. 2 (d). Un constructor es "toda persona que se dedique al negocio de la construcción en calidad de empresario o **principal responsable de la promoción, diseño, ventas**, construcción de obras de urbanización para viviendas, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos". (Énfasis nuestro).

C.

"La indispensabilidad de una parte deviene del mandato constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley". R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil*, 6ta ed. rev., San Juan, LexisNexis de Puerto Rico, 2017, pág. 165. Una parte indispensable es:

> [A]quella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia. *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014).

Por lo tanto, "la falta de parte indispensable incide sobre la jurisdicción del Tribunal, y [...] reconocida la ausencia de una parte indispensable, debe desestimarse la acción". *García Colón et al. v. Sucn. González*, 178 DPR 527, 561 (2010) (opinión en conformidad

de la Juez Asociada Señora Rodríguez Rodríguez); Véase además *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223-224 (2007).

Nuestro Tribunal Supremo ha desarrollado criterios que deben considerarse para determinar quién es una parte indispensable.

> Al determinar si una persona es una parte indispensable en un pleito, **se requiere un enfoque pragmático e individualizado**, según las particularidades de cada caso. A tal efecto, el tribunal deberá examinar los intereses implicados y distinguir entre los diversos géneros de casos. Ello exige una evaluación jurídica de factores tales como **tiempo, lugar, modo, alegaciones, prueba, clases de derechos, intereses en conflicto, resultado y formalidad**. A su vez, **se deberá auscultar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente**". *FCPR v. ELA et al.*, 211 DPR 521, 531-532 (2023). (Citas omitidas) (Énfasis nuestro).

No toda parte que tenga derecho a comparecer o solicitar intervención en un caso es parte indispensable. Una parte indispensable es aquella que tiene un interés común en el pleito. Hernández Colón, *op. cit.*, pág. 166. Sin embargo, dicho interés no es cualquier interés sobre el pleito. "El interés común tiene que ser uno real e inmediato". *Íd.* No puede estar basado en especulaciones ni eventos futuros.

Ahora bien, las Reglas de Procedimiento Civil no aplican automáticamente a los procesos administrativos. *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615 (2018); *Pérez v. VPH Motors Corp.*, 152 DPR 475 (2000) (*per curiam*). "[N]ada impide que las Reglas de Procedimiento Civil se adopten para guiar el curso del proceso administrativo, siempre y cuando no sean incompatibles con él y propicien una solución justa, rápida y económica". *SLG Saldaña-Saldaña v. Junta, supra*, pág. 623. Esto pues los procesos administrativos deben ser ágiles y sencillos para propiciar que personas legas lo utilicen. *Íd.*

La Regla 24 del Reglamento Núm. 8034, Reglamento de Procedimientos Adjudicativos, del 14 de junio de 2011, Departamento de Asuntos del Consumidor (Reglamento Núm. 8094) dispone que "[l]as Reglas de Procedimiento Civil y de Evidencia no serán de estricta aplicación a las vistas administrativas, sino en la medida en que el Funcionario o Panel de Jueces que presida la vista o el Departamento estime necesario para llevar a cabo los fines de la justicia".

La LPAU, *supra*, establece los criterios para determinar quién es parte en un proceso administrativo. En este contexto, una "parte" es:

> [T]oda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. *Íd.*, sec. 1.3 (k).

Puede ser parte tanto aquellas personas incluidas en el pleito originalmente como aquellas que hayan sido permitidas intervenir. *Fund. Surfrider y otros v. A.R.Pe.*, 178 DPR 563 (2010). En adición, puede ser parte aquella persona "cuyos derechos y obligaciones pueden verse afectados adversamente por la acción o inacción de la agencia". *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 188 (2009).

Los tribunales deben actuar con precaución al momento de acumular una parte indispensable a un pleito administrativo. Ante la falta de una parte indispensable en un procedimiento administrativo, esta Curia ha concluido que la inclusión de un tercero en un procedimiento administrativo sin que el querellante o la agencia lo estime necesario podría complicar y retrasar los procedimientos.[22]

---

[22] Véanse KLRA202300341, panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Cruz Hiraldo (juez ponente);

D.

La obligación "consiste en el deber de realizar una prestación. Esta es la conducta que ha de seguir el obligado para extinguir la obligación mediante el correspondiente acto de cumplimiento". J. Puig Brutau, *Compendio de derecho civil*, 2ª ed. rev., Barcelona, Ed. Bosch, 1994, Vol. II, pág. 1. De particular interés a nuestro análisis son las obligaciones que nacen de los contratos.

Un contrato es el negocio jurídico entre dos o más personas donde las partes contratantes se obligan a dar, hacer o no hacer una cosa. El Artículo 1044 del Código Civil de 1930,[23] (30 LPRA sec. 2994) (Código Civil de 1930) dispone que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor de los mismos". Los contratantes pueden exigir el cumplimiento específico con las cláusulas y condiciones pactadas. *Casera Foods v. E.L.A.*, 108 DPR 850 (1979). "Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Código Civil de 1930, *supra*, Art. 1233. Los contratantes se "obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". *Íd.*, Art. 1210.

Cuando una parte no cumple lo pactado, incurre en incumplimiento contractual. "[L]a responsabilidad contractual se basa 'en el quebrantamiento de un deber que surge de un contrato expreso o implícito'. A través de las acciones *ex contractu* se vindican los daños acaecidos como consecuencia del incumplimiento de

---

KLRA201200587, panel integrado por su presidenta, la Juez García García, la Jueza Varona Méndez y la Juez Gómez Córdova (juez ponente).

[23] Aunque el Código Civil de 1930 fue derogado tras la aprobación del Código Civil de 2020, Ley Núm. 55-2020, (31 LPRA sec. 5311 *et seq.*), hacemos referencia al Código Civil de 1930 puesto que estaba vigente cuando el contrato entre el Sr. Jusino y el Comercial Sabaneño fue constituido.

obligaciones previamente pactadas". *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 56 (2015) (citando a *Soc. de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998)). Como los contratos regulan las relaciones entre las partes contratantes, las acciones por incumplimiento solo pueden ser ejercitadas por una parte contratante contra otra. *Íd.*, pág. 57. El deudor que incumpla con sus obligaciones responde "con todos sus bienes presentes y futuros". Código Civil de 1930, *supra*, Art. 1811. Un acreedor tiene causa de acción contra un deudor por el mero incumplimiento con las obligaciones contractuales. Puig Brutau, *op. cit.*, págs. 129-130.

"El Código Civil distingue entre la acción de daños y perjuicios extracontractual establecida en su Art. 1802 y la derivada del incumplimiento contractual". *Muñiz-Olivari v. Stiefel Labs*, 174 DPR 813, 818 (2008). Si bien existe una causa de acción en contra de un deudor que incumple, también existe causa de acción en contra de un tercero que frustre una obligación contractual. Es patentemente claro que dicho tercero no puede ser una parte contratante; trata de un extraño completo al contrato. Esta causa de acción es enteramente independiente a la causa de acción que surge por incumplimiento contractual.

Lo contratos no pueden obligar a terceros; estos solo obligan a las partes contratantes. Código Civil de 1930, *supra*, Art. 1209. En consecuencia, una parte no puede unilateralmente crear un vínculo entre un tercero y todos los contratantes. Nuestro Tribunal Supremo ha reconocido una causa de acción al amparo del Art. 1802 del Código Civil de 1930 en contra de un tercero por la interferencia culposa con las obligaciones contractuales. *Gen. Office Prods. v. A.M. Capen's Sons*, 115 DPR 553 (1984).

El Tribunal Supremo ha desarrollado los requisitos para la acción de interferencia culposa con las obligaciones contractuales. Primero, tiene que existir un contrato. Sin la existencia de un

contrato, no procede la acción. Segundo, tiene que mediar la culpa. No basta con mera negligencia, el tercero tiene que haber actuado intencionalmente con conocimiento de la existencia de un contrato. Los terceros y cuartos requisitos son que haya ocurrido un daño y que este sea a causa de la interferencia del tercero. *Íd.*, págs. 558-559.

El tratadista José Puig Brutau nos dice que "[l]a responsabilidad del deudor puede derivar del retraso o mora en el cumplimiento, del incumplimiento total imputable y **del cumplimiento defectuoso de la obligación**". *Íd.*, pág. 139. (Énfasis nuestro). Por lo tanto, "es fuente de responsabilidad cualquier acto contrario a la diligencia que exige el cumplimiento de la prestación debida, causando un perjuicio al acreedor". *Íd.* Esto es, aunque el deudor cumpla con su obligación, su cumplimiento "no se ajusta a lo que exige el vínculo obligatorio; es decir, cumple, pero cumple mal". *Íd.*, pág. 130.

E.

La norma vigente en nuestro ordenamiento jurídico es que, en las relaciones contractuales, no se presume la solidaridad. *Menéndez, Velázquez v. Rodríguez et al.*, 203 DPR 885 (2020) (Opinión en conformidad de la Jueza Asociada Señora Rodríguez Rodríguez); *Quílez-Velar et al. v. Ox Bodies, Inc.*, 198 DPR 1079 (2017). El Art. 1090 del Código Civil de 1930 "establece la mancomunidad como la regla y la solidaridad como la excepción, y surge esta última solo cuando la obligación expresamente lo determine". *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 375 (2012). "A diferencia de las obligaciones mancomunadas, en las solidarias el énfasis es en la totalidad de la responsabilidad en cada una de las partes. Todos los deudores solidarios son responsables frente al acreedor por la totalidad de la deuda". M. E. García

Cárdenas, *Derecho de obligaciones y contratos*, 2ª ed. rev., Puerto Rico, MJ Editores, 2017, págs. 125-126.

El Código Civil de 1930 distingue entre la solidaridad voluntaria, que es la pactada, y la legal, que es la que impone la ley, el Código Civil y la jurisprudencia. *Íd.*, pág. 127. El Art. 1483 del Código Civil de 1930, *supra*, dispone que:

> El contratista de un edificio que se arruinase por vicios de la construcción responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez (10) años, contados desde que concluyó la construcción; **igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere**, si se debe la ruina a vicios del suelo o de la dirección. (Énfasis nuestro).

Ante este escenario, el Código Civil de 1930 le impone responsabilidad solidaria, ante la ruina, causada por vicios de construcción o incumplimiento de condiciones contractuales, al contratista de construcción y al arquitecto que dirige la construcción. *Rivera v. A & C Development Corp.*, 144 DPR 450, 475 (1997). "La doctrina concurre en que los vicios de construcción son aquéllos concernientes a los materiales empleados y a la ejecución de la obra". *Íd.*

El Art. 1483 aplica "a aquellos vicios e imperfecciones que causen la ruina del edificio; ya sea la ruina total, la ruina parcial, la amenaza de ruina o la ruina funcional, distintas etapas éstas jurisprudencialmente reconocidas como ruina". *Íd.*, págs. 465-466. Para que aplique el Art. 1483 del Código Civil de 1930, es imperativo que la obra esté en estado de ruina. *Pacheco v. Estancias*, 160 DPR 409, 421 (2003).

Nuestro ordenamiento reconoce cuatro tipos de ruina: la ruina total, la ruina parcial, la amenaza de ruina y la ruina funcional. *Íd.* Cualquiera de las modalidades de ruina puede activar las disposiciones del Art. 1483. Las primeras tres modalidades implican un derrumbe o amenaza de derrumbe o colapso.

Existe ruina total cuando se compromete la solidez o estabilidad del edificio. La ruina parcial provoca el derrumbamiento de uno de los elementos estructurales del edificio, pero no la totalidad de éste. La amenaza de ruina implica la degradación parcial de los elementos del edificio que, a su vez, compromete su solidez estructural o parte de ésta. *Íd.*

Sin embargo, la ruina funcional no requiere que parte de la obra haya colapsado o esté en peligro de colapsar.

**En la situación particular de la ruina funcional no es necesario que se comprometa la solidez o estabilidad del edificio**. Resulta imperiosa, sin embargo, la existencia de graves defectos o vicios. Para hacer esta determinación hemos considerado si los defectos o vicios afectan seriamente la utilización y el disfrute de la edificación, si exceden de la medida de las imperfecciones que cabe esperar en una construcción o si causan un perjuicio considerable. *Rivera v. A&C Development Corp.*, *supra*, pág. 466 (citas omitidas). (Énfasis nuestro).

**Se considera que un edificio se encuentra en estado de ruina funcional cuando** los vicios de los que adolece: (1) amenazan la seguridad pública o estabilidad del edificio; **(2) le causan un perjuicio grave al dueño**; **(3) tornan la obra en impropia para el uso a que se le destina**, o (4) exceden las medidas de las imperfecciones que cabe esperar razonablemente en una construcción. **La presencia de cualquiera de estas situaciones en una construcción produce un estado de ruina funcional**. El hecho de estar la estructura en ese estado no implica que estén amenazados de ruina sus elementos vitales. No obstante, se afecta severamente su utilización y disfrute. *Pacheco v. Estancias*, *supra*, págs. 420-421. (Énfasis nuestro).

"Una vez el dueño del edificio presenta prueba que demuestre que los vicios de construcción que sufre el edificio provocan alguno de los tipos de ruina antes mencionados, se activa una presunción de culpa, de negligencia o de ambas en contra del contratista que tuvo a su cargo la construcción". *Íd.*, pág. 421. Para rebatir la presunción de responsabilidad, el contratista o el arquitecto deben "probar mediante preponderancia de prueba que no se deben a su intervención, sino que se trata de un caso de fuerza mayor, totalmente imprevisible e inevitable en los conocimientos y medios técnicos de la profesión". *Roselló Cruz v. García*, 116 DPR 511, 519 (1985). Ahora bien, cuando no es un arquitecto, sino un ingeniero,

quien dirige la obra, "la doctrina española sostiene que debe someterse a la misma responsabilidad que al arquitecto". *Íd.* Esta interpretación ha sido adoptada en Puerto Rico. "Estamos de acuerdo con esta interpretación pues responde a la realidad en nuestro medio de que, en muchas ocasiones quien está a cargo del diseño del proyecto y su dirección es un ingeniero y no un arquitecto". *Íd.*, págs. 519-520.

No olvidemos que cuando existen obligaciones solidarias, el acreedor le puede exigir a cualquiera de los deudores solidarios la totalidad de la deuda. "El efecto fundamental de la solidaridad pasiva es el de que el pago hecho por uno de los deudores solidarios extingue la obligación". J. Puig Brutau, *op. cit.*, pág. 41 (cita omitida). Ahora bien, "[a]l pagar uno de los deudores solidarios la deuda que afectaba a todos deberá procederse a la redistribución del gravamen entre ellos". *Íd.*, pág. 42. Esta es la acción conocida como la nivelación. "El propósito fundamental del derecho de nivelación en Puerto Rico ha sido el de evitar el enriquecimiento injusto". *S.L.G. Szendrey v. Hospicare, Inc.*, 158 DPR 648, 654 (2003). El Art. 1098 del Código Civil de 1930, *supra*, incorpora este concepto a nuestro ordenamiento jurídico. Dispone que:

> El pago hecho por uno de los deudores solidarios extingue la obligación.
> **El que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponda, con los intereses del anticipo.**
> La falta de cumplimiento de la obligación por insolvencia del deudor solidario será suplida por sus codeudores a prorrata de la deuda de cada uno. (Énfasis nuestro).

Con el derecho aplicable esbozado, nos encontramos en posición de resolver.

III.

En el caso de autos, Comercial Sabaneño ha señalado varios errores que debemos atender. En primer lugar, señala que DACo

erró al concluir que Comercial Sabaneño, Inc. es una empresa dedicada a proveer servicios de construcción.

Recordemos que, ante la revisión de decisiones administrativas, debemos otorgarle deferencia a las agencias por el conocimiento y peritaje que estas tienen en las materias que les competen. Al momento de tomar decisiones, las agencias deben hacer determinaciones de hecho y conclusiones de derecho. Los tribunales deben sostener determinaciones de hechos si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo. *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115.

De la prueba contenida en el expediente, no surge que DACo haya cometido el error señalado. Las alegaciones de Comercial Sabaneño estuvieron basadas únicamente en los testimonios de empleadas de Comercial Sabaneño ofrecidos en la vista administrativa.[24] Sin embargo, la definición de un "constructor" según la Ley Núm. 130, *supra*, y el Reglamento Núm. 2268, *supra*, incluye a toda persona que "se dedique al negocio de la construcción en calidad de empresario o principal **responsable de la promoción, diseño, venta**, construcción de obras de urbanización para vivienda, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos". (Énfasis nuestro). Por admisión de Comercial Sabaneño, este y Casas Universales se dedican a la promoción y venta de casas prefabricadas.[25] Esto incluye la venta de materiales de construcción y de los planos de dichas propiedades.

Debemos tener meridianamente claro que la definición abarcadora del concepto de construcción se debe a la importancia que le ha otorgado la Asamblea Legislativa y la política pública al hogar.

---

[24] Acta de Transcripción, *supra*, págs. 7, 10-12 y 17-18.
[25] *Recurso de revisión judicial de decisión administrativa*, *supra*, págs. 9-10.

Uno de los principios cardinales del Propósito de Puerto Rico es que cada familia puertorriqueña tenga un hogar propio. Tal hogar debe ser uno adecuado que responda a las necesidades, aspiraciones y recursos económicos de nuestros conciudadanos, y que le permita desarrollar y disfrutar a plenitud su vida familiar y comunal.

[…]

Corresponde a nuestro Gobierno proteger a sus ciudadanos contra tales prácticas a fin de garantizar que la política pública de que cada familia tenga un hogar propio y adecuado se cumpla a plenitud en todos sus aspectos. Es por esto que **se hace necesario proteger adecuadamente a los compradores de viviendas, prevenir practicas indeseables en el negocio de la construcción, regular los contratos de construcción** y crear una oficina que se ocupe de promover los objetivos de esta ley. Exposición de Motivos de la Ley Núm. 130, *supra.* (Énfasis nuestro).

Ello de por sí constituye razón suficiente para la determinación tomada por DACo.

Atendido el primer error, pasamos a determinar si el Ingeniero González Lugo es una parte indispensable y si Comercial Sabaneño responde por los daños causado por los actos u omisiones del mismo.

Como hemos resaltado, la inclusión de una parte indispensable es fundamental para que un tribunal pueda resolver una controversia. Sin la acumulación de una parte indispensable, el tribunal carece de jurisdicción y debe desestimar el caso. Ahora bien, también hemos señalado que las Reglas de Procedimiento Civil no aplican en los procedimientos ante el DACo. Esto no quiere decir que el foro administrativo puede afectar los derechos de una parte indispensable sin haberla acumulado al pleito.

Luego de analizar los hechos según el derecho aplicable, concluimos que el Ingeniero González Lugo no es una parte indispensable. En esencia, el caso ante nuestra consideración trata sobre el incumplimiento de una obligación contractual. Entre el Sr. Jusino y Comercial Sabaneño, existía un contrato de compraventa. En el contrato, Comercial Sabaneño se obligó a proveer material de construcción, planos de construcción y los servicios de ingeniería,

supervisión de etapas y gestión de permisos de construcción y uso. El Sr. Jusino tenía derecho a exigir cumplimiento específico con las condiciones del contrato.

Con el propósito de cumplir con sus obligaciones contractuales, Comercial Sabaneño contrató los servicios del Ingeniero González Lugo. No existía relación contractual alguna entre el Sr. Jusino y el Ingeniero González Lugo. La obligación de Comercial Sabaneño ante el Sr. Jusino no se transfirió al Ingeniero González Lugo por el mero hecho de este ser contratado. La relación entre Comercial Sabaneño y el Ingeniero González Lugo en nada afecta la relación contractual entre Comercial Sabaneño y el Sr. Jusino. Resolver al contrario sería permitir que un deudor evite sus obligaciones contractuales mediante la delegación de estas a terceros.

No hace falta la acumulación del Ingeniero González Lugo para conceder un remedio final entre Comercial Sabaneño y el Sr. Jusino. En el Contrato de Venta entre el Sr. Jusino y Comercial Sabaneño, únicamente son estas las partes indispensables en un pleito que se reclama su incumplimiento. Al no proveer servicios de ingeniería, supervisión de etapas y gestión de permisos de construcción y uso con la diligencia que se espera de la naturaleza del negocio, Comercial Sabaneño cumplió defectuosamente sus obligaciones contractuales. En consecuencia, Comercial Sabaneño responde por el incumplimiento contractual al no proveer adecuadamente los servicios de ingeniería o supervisión de etapas de construcción.

Finalmente, Comercial Sabaneño alega que no debe responder solidariamente con MSF Contractors Corp. Luego de analizar el derecho vigente y aplicable, concluimos que no tiene razón.

"Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de

sus cláusulas". Código Civil de 1930, *supra,* Art. 1233. En el Contrato de Venta entre el Sr. Jusino y Comercial Sabaneño dispone que Comercial Sabaneño proveerá "servicio ingeniero, supervisión de etapas, gestión de permisos de construcción y uso". No cabe duda de que Comercial Sabaneño se obligó a proveer los servicios de ingeniería que supervisarían la construcción.

Culminada la construcción de la obra, tanto el Ingeniero González Lugo, el Ingeniero Pérez Berenguer y el inspector del DACo concluyeron que la propiedad sufría de múltiples defectos. Como hemos señalado, los tribunales son peritos en asuntos de derecho, por lo que no le debemos una gran deferencia a las conclusiones de derecho de los foros administrativos. Por lo tanto, podemos concluir que los defectos señalados en la *Resolución* de DACo constituyen una ruina funcional.

Veamos nuevamente los defectos señalados:

(a) se observó que la terminación del piso muestra grietas y no se pulió el mismo, (b) las paredes aparentan no tener segunda mano de pintura en primer y segundo nivel, (c) falta de empañetado en el muro periferal de toda la marquesina, (d) en algunas áreas, el empañetado no fue terminado apropiadamente, (e) algunos receptáculos de los baños y cocina no son a prueba de electrocución, (f) algunos operadores de las ventanas no funcionan bien, (g) en varias puertas no funcionan las cerraduras, (h) los relieves que sobresalen las columnas se deberán corregir, (i) falta de llave de paso angular, (k) la zapata del pedestal eléctrico está expuesta, (l) la tubería sanitaria que corre hacia el pozo séptico está expuesta. No tienen la profundidad requerida. (m) una de las losetas en la sala está mal instalada, (n) la huella del primer escalón (bajando hacia la primera planta) no cumple con los requerimientos mínimos de huella y contrahuella (tiene 4 pulgadas de contrahuella), (o) [l]a instalación de los lavamanos no cumple con la altura indicada en los planos, (p) falta instalación de pasamanos y barandas de la escalera.[26]

Por lo que es forzoso concluir que estos defectos, probados en el foro administrativo, le causaron un perjuicio grave al dueño y tornan la obra en impropia para el uso a que se le destina. En

---

[26] *Íd.*

consecuencia, y antes de poder vivir la casa, Sr. Jusino tuvo que gastar más de $8,000 para corregir y sanear los defectos.

El Art. 1483 le impone responsabilidad solidaria a los contratistas de construcción y arquitecto que dirige la obra cuando esta resulta en una ruina por causas de vicios de construcción. En ausencia de un arquitecto, hemos reconocido que responde el ingeniero supervisor.

No tenemos duda que tanto MSF Contractors Corp. como Comercial Sabaneño, por sus actos u omisiones, contribuyeron a la ruina de la propiedad que recibió el Sr. Jusino. En el contrato entre el Sr. Jusino y Comercial Sabaneño, fue Comercial Sabaneño quien se obligó a proveer los servicios de ingeniería. Es este quien se obligó a supervisar la construcción de la obra. Por lo tanto, responde solidariamente con el contratista de construcción por los daños causados.

En conclusión, no se cometieron ninguno de los errores señalados.

IV.

Por los fundamentos que anteceden, *confirmamos* la *Resolución* del DACo.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La jueza Álvarez Esnard concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones